IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | NO. 19-0134-1 |
| | : | |
| v. | : | and |
| | : | |
| | : | CIVIL ACTION |
| NVAHBULAI QUISIAH | : | NO. 22-1324 |
| *Defendant* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                                 FEBRUARY 28, 2023

## MEMORANDUM OPINION

### INTRODUCTION

Before the Court are two counseled *motions under 28 U.S.C. § 2255 to vacate, set aside, or correct a sentence by a person in federal custody*, (Docs. 75, 79), filed by Defendant Nvabulai Quisiah ("Defendant"), seeking to vacate his conviction on the grounds that trial counsel was ineffective. The Government opposes the motions. (Doc. 87). The issues raised in the motions have been fully briefed and are, therefore, ripe for disposition. For the reasons set forth herein, Defendant's motions are denied.

### BACKGROUND

The facts relevant to the motions are summarized as follows:

In March 2019, Defendant was indicted by a grand jury and charged with one count of conspiracy to defraud the United States, in violation of 18 U.S.C. § 371; eight counts of aiding and assisting in the preparation of false tax returns, in violation of 26 U.S.C. § 7206(2); three counts of wire fraud, in violation of 18 U.S.C. § 1343; and three counts of aggravated identity theft, in violation of 18 U.S.C. § 1028(A), all arising from Defendant's participation, from 2010 through 2017, in a scheme to defraud the United States Internal Revenue Service by preparing federal income tax returns for clients that, *inter alia*, falsely claimed dependents and child care expenses to increase tax refunds. During all times relevant to the indictment, Defendant was the owner of First Premier Tax Service,

also doing business as Kosh & Associates, a tax preparation business operating in Philadelphia, Pennsylvania.

Defendant retained Gerald Pomerantz ("Pomerantz") to represent him in this criminal matter. On June 14, 2019, the Government contacted Pomerantz to convey to Defendant a plea agreement in which Defendant would plead guilty to the conspiracy count, eight counts of preparing false tax returns, three counts of wire fraud, and three counts of aggravated identity theft. The proposed agreement also outlined, *inter alia*, the penalties for each offense—particularly, that the aggravated identity theft charges carried a mandatory minimum sentence of two years of imprisonment to be served consecutive to any sentence imposed for the underlying predicate felony of wire fraud. (*See* Guilty Plea Agreement, Gov't's Resp. in Opp. Ex. 3, ECF 87-1, ¶ 3). Pomerantz responded that he would meet with Defendant and discuss with him the plea agreement being offered and requested the Government's recommendation for sentencing.

On June 17, 2019, the Government responded to Pomerantz' request, stating that its preliminary analysis indicated a sentencing guidelines range of 24–30 months' imprisonment followed by the mandatory 24 months' imprisonment on the aggravated identity theft charges, and that the Government assumed Defendant would ask for a non-stacking of the three aggravated identity theft sentences. On June 26, 2019, Pomerantz sent an email message to the Government indicating that he had recently undergone an angioplasty procedure, and that Defendant had agreed to enter a guilty plea. Defendant subsequently signed the plea agreement.

The Court was notified of Defendant's agreement, and a change of plea hearing was scheduled for September 25, 2019. Defendant, represented by Pomerantz, appeared at the hearing before this Court. During the plea colloquy, this Court asked Defendant a series of questions, including whether he had discussed the case completely with his counsel, whether he discussed the plea agreement with counsel and understood it, and whether he was satisfied with the advice he received from his attorney. Defendant answered yes to these questions. The Court also reviewed with Defendant Paragraph 3 of the Plea Agreement, which emphasized the consecutive nature of the sentence for the aggravated identity theft charges, and asked Defendant if he understood the statutory penalties he faced. Defendant responded that he understood. Defendant also indicated that he did not need any additional time to discuss the plea agreement or anything else with counsel.

When the Court inquired whether Defendant admitted to the facts of his case as summarized by the Government, Defendant responded that he had not filed any fraudulent tax returns and thereby refused to admit to the facts in support of the charges but that he would plead guilty because he was the owner of the company. Troubled, the Court asked the Government whether its attorneys believed that Defendant's allocution was sufficient to accept his guilty plea. The Government responded that the allocution was insufficient because Defendant had not admitted

to the facts underlying the charges of preparation and filing of fraudulent tax returns or the facts underlying the aggravated identity theft charges. This Court agreed and refused to accept the plea. Thereafter, Pomerantz asked for time to discuss the matter with his client. This Court granted the request, adjourned the change of plea hearing, and scheduled a status hearing for October 4, 2020. On the scheduled day of the status hearing, Pomerantz notified the Court that Defendant had decided to proceed to trial, which was then scheduled for February 21, 2020.

On February 19, 2020, two days before jury selection, Defendant filed a motion for an extension of time to file a motion to suppress, which was opposed by the Government. (Docs. 35, 36). The motion was denied. (Doc. 37).

On February 21, 2020, Defendant filed a motion to suppress all physical evidence, (Doc. 38), which was opposed by the Government, (*see* Doc. 36). Following oral argument on the motion, the motion was denied. (*See* Doc. 39). The jury was selected and after the presentation of approximately fourteen witnesses, including Defendant, during a four-day trial, the jury found Defendant guilty of all the charges against him. According to Defendant, Pomerantz was hospitalized for internal bleeding the day after the trial concluded.

On August 24, 2020, Defendant was sentenced as follows: as to Count 1 (conspiracy) and Counts 19–21 (wire fraud) of the indictment, to a term of 36 months of imprisonment followed by 3 years of supervised release, restitution in the amount of $215,941, and a special assessment of $1,500; as to Counts 2–9 (aiding and abetting the preparation of false tax returns), to a concurrent term of 36 months of imprisonment followed by 1 year of supervised release, restitution in the amount of $215,941, and a special assessment of $1,500; and as to Counts 25–27 (aggravated identity theft), to a consecutive term of 24 months of imprisonment on each count, Counts 25–27 to be served concurrently, followed by 1 year of supervised release, restitution in the amount of $215,941, and a special assessment of $1,500.

On August 31, 2020, Defendant filed a Notice with the United States Court of Appeals for the Third Circuit appealing his sentence and arguing that the denial of his motion to suppress was in error and an abuse of discretion. (Doc. 61). The appeal was voluntarily dismissed on June 16, 2021. (Doc. 72).

On April 1, 2022, Defendant filed the instant motion under 28 U.S.C. § 2255 to vacate, set aside, or correct a sentence. (Doc. 75). On May 11, 2022, Defendant filed a similar motion under § 2255 using the court's standard form. (Doc. 79). In these motions, Defendant argues an ineffective assistance of counsel claim.

**LEGAL STANDARD**

Under the Antiterrorism and Effective Death Penalty Act of 1996, a prisoner serving a sentence in federal custody may move to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 on the grounds that the "sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral review . . . ." 28 U.S.C. § 2255(a). A motion under § 2255 is a collateral challenge that is viewed less favorably than a direct appeal, and "relief under § 2255 is available only when 'the claimed error of law was a fundamental defect which inherently results in a complete miscarriage of justice, and . . . present[s] exceptional circumstances where the need for the remedy afforded by the writ . . . is apparent.'" *United States v. Travillion*, 759 F.3d 281, 288 (3d Cir. 2014) (quoting *Davis v. United States*, 417 U.S. 333, 346 (1974)). If a court finds that the judgment or sentence imposed was not authorized by law, or that there has been such a denial or an infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall either discharge the prisoner, resentence him, grant a new trial, or correct the sentence, as may appear appropriate. 28 U.S.C. § 2255(b).

**DISCUSSION**

A defendant's constitutional right to the assistance of counsel in all criminal matters is guaranteed by the Sixth Amendment to the United States Constitution. The right to counsel is the right to effective assistance of counsel, *Strickland v. Washington*, 466 U.S. 668, 686 (1984), and extends to all critical stages of a criminal proceedings, including the plea-bargaining process, *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009) (citing *United States v. Wade*, 388 U.S. 218, 227–28 (1967)); *Argersinger v. Hamlin*, 407 U.S. 25 (1972). Here, Defendant retained Pomerantz as

his counsel and now claims that counsel provided ineffective assistance. Specifically, Defendant argues that his conviction should be vacated based on the following reasons: (1) Pomerantz misadvised him about his sentence exposure because counsel was unaware of the mandatory minimum sentence; (2) Pomerantz failed to inform him that the Government had made a plea offer; (3) Defendant was unaware that Pomerantz had virtually no prior experience with federal criminal proceedings; and (4) Pomerantz' performance at trial was deficient because of his failing health, as evidenced by Pomerantz' hospitalization the day after trial concluded. The Government disputes that Pomerantz was ineffective and argues that Defendant has not met his burden to show that counsel's performance during the guilty plea negotiations and/or at trial fell below reasonable professional standards, or that the outcome of Defendant's proceedings would have been different but for Pomerantz' alleged ineffectiveness.

A collateral attack premised on an ineffective assistance of counsel argument is reviewed under the two-pronged test established by the United States Supreme Court (the "Supreme Court") in *Strickland*, 466 U.S. 668. To prevail on an ineffective assistance of counsel claim, a petitioner must demonstrate: (1) that counsel's representation fell below an objective standard of reasonableness based on prevailing professional norms; and (2) that the deficient representation was prejudicial. *Id.* at 687–88; *United States v. Otero*, 502 F.3d 331, 334 (3d Cir. 2007). Conclusory allegations are insufficient to entitle the petitioner to relief under § 2255. *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Further, a district court need not conduct its analysis of the two prongs in a particular order, or address both prongs of the inquiry, if the petitioner makes an insufficient showing in one of the prongs. *See Strickland*, 466 U.S. at 697; *United States v. Lilly*, 536 F.3d 190, 196 (3d Cir. 2008).

In determining whether counsel has satisfied the objective standard of reasonableness set forth in the first prong, courts must be highly deferential toward counsel's conduct. *Strickland*, 466 U.S. at 689. There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *See United States v. Gray*, 878 F.2d 702, 710 (3d Cir. 1989). The court must defer to counsel's tactical decisions, avoiding "the distorting effects of hindsight," and give counsel the benefit of a strong presumption of reasonableness. *Strickland*, 466 U.S. at 689; *Gov't of the V.I. v. Weatherwax*, 77 F.3d 1425, 1431 (3d Cir. 1996). To succeed with an ineffective assistance of counsel claim, the petitioner "must overcome the 'presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" *Bell v. Cone*, 535 U.S. 685, 698 (2002) (quoting *Strickland*, 466 U.S. at 689). "It is only the rare claim of ineffective assistance of counsel that should succeed under the properly deferential standard to be applied in scrutinizing counsel's performance." *United States v. Kaufman*, 109 F.3d 186, 190 (3d Cir. 1997) (citations omitted).

To satisfy the prejudice prong, the petitioner must show that *but for* counsel's errors, the outcome of the proceeding would have been different. *See Strickland*, 466 U.S. at 694. The Supreme Court has defined "prejudice" as a "showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687; *see also Frey v. Fulcomer*, 974 F.2d 348, 358 (3d Cir. 1992) ("[A] petitioner must demonstrate a reasonable probability that, but for the unprofessional errors, the result would have been different.").

### *Pomerantz' Assistance During Plea Negotiations*

Defendant argues that Pomerantz' assistance during plea negotiations was ineffective because Pomerantz (1) misadvised Defendant of his sentence exposure because Pomerantz was unaware of the mandatory minimum sentence and (2) failed to inform Defendant that the

6

Government had made a plea offer.  In response, the Government disputes these contentions and argues that Defendant was, in fact, aware of the mandatory minimum sentence and of the Government's plea offer.

As to Defendant's argument that Pomerantz failed to advise him of the mandatory minimum attached to his aggravated identity theft charges, Defendant argues that Pomerantz "has provided an affidavit indicating that due to his inexperience he was unaware that there was a minimum mandatory sentence attached and therefore, failed to properly advise the Defendant during plea negotiations."  (Mot., Doc. 75, at pp. 2–3).  However, Defendant did not attach any such affidavit to his filings and, therefore, provides no support for his contention.

Nonetheless, assuming *arguendo* that Pomerantz was unaware of the mandatory minimum sentence, Defendant's ineffective assistance of counsel claim on this basis fails because he cannot demonstrate prejudice.  As noted, during the aborted guilty plea colloquy, this Court inquired whether Defendant had read and understood the terms of the plea agreement, to which he responded he did.  The Court also advised Defendant of the statutory penalties he would be facing, and it carefully reviewed Paragraph 3 of the Plea Agreement with Defendant, which itemized each offense charged and the statutory penalty for each.  Where a court informed a defendant of the mandatory minimum and the defendant indicated assent under oath, as is the case here, the defendant cannot establish any prejudice because of counsel's purported failure to advise the defendant of the mandatory minimum.  *See, e.g.*, *Collison v. United States*, 1997 WL 602777, at *2 (E.D. Pa. Sept. 22, 1997) ("Even assuming that counsel's performance was deficient insofar as he allegedly failed to advise petitioner as to the mandatory minimum and maximum sentences prior to the plea hearing, petitioner cannot show that he was prejudiced under the second-prong of *Strickland* since the record shows that he was informed as to the possible range of sentences by

the plea agreement and again at the plea hearing.") (citing *United States v. Foster*, 68 F.3d 86, 88 (4th Cir. 1995) (holding that defendant could not show prejudice under *Strickland* where trial court informed defendant at plea hearing of potential sentence he faced)).

The record shows that not only did this Court inform Defendant at his plea hearing of the potential mandatory minimum sentence he faced, but Defendant also acknowledged reading and understanding the plea agreement before and during the change of plea hearing—an agreement that contained the information regarding the mandatory minimum sentence for the aggravated identity theft charges:

> THE COURT: Paragraph 3, it says here, sir, that you understand and agree and it has been explained to you by your counsel that the Court may impose the following statutory maximum and mandatory minimum sentences.
>
> As to Count 1, conspiracy, the Court may impose five years' imprisonment followed by three years of supervised release, a 250,000-dollar fine, and a 100-dollar special assessment.
>
> As to Counts 2 through 9, aiding and assisting the filing of false income tax returns, it is a sentence of three years' imprisonment per count, one year of supervised release, a 250,000-dollar fine, and a 100-dollar special assessment.
>
> As to Counts 9 through 21, wire fraud, it is per count 20 years' imprisonment, a 3-year term of supervised release, a 250,000-dollar fine, and a 100-dollar special assessment.
>
> And as to Counts 25 through 27, which is an aggravated identity theft, it is a mandatory minimum sentence of two years' imprisonment to be served consecutive to any other sentence I may impose, a one-year term of supervised release, a 250,000-dollar fine, and a 100-dollar special assessment.
>
> The total maximum and mandatory minimum sentence that you are exposing yourself to, sir, is 89 years' imprisonment plus a mandatory consecutive sentence of 24 months' imprisonment, a 3-year period of supervised release, a 3,750,000-dollar fine, a 1,500-dollar special assessment, and full restitution will be ordered and considered.

>   Do you understand that if I wanted to do that, I could sentence you up to 89 years' imprisonment? Do you understand that?
>
>   THE DEFENDANT: Yes, ma'am.
>
>   THE COURT: And understanding that, sir, do you still wish to plead guilty to these charges?
>
>   THE DEFENDANT: Yes.

(Plea Hr'g Tr., Doc. 73, 10:9–11:18). Accordingly, Defendant cannot establish the prejudice prong of the *Strickland* test to maintain his ineffective assistance of counsel claim on this ground. Under these circumstances, this Court need not address whether Pomerantz' performance fell below an objective standard of reasonableness.

Defendant also argues that Pomerantz' performance was deficient because he failed to inform Defendant that the Government had made a plea offer. As a general rule, defense counsel has the duty to communicate formal offers from the prosecution, and failure to do so may constitute constitutionally deficient performance by counsel. *Missouri v. Frye*, 566 U.S. 134, 147 (2012). To demonstrate *Strickland* prejudice as a result of such failure, the defendant "must show that *but for* the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Lafler v. Cooper*, 566 U.S. 156, 164 (2012).

Here, the record supports a finding that Defendant is mistaken that he was unaware of the plea offer. The Government provided evidence that Pomerantz communicated the Government's offer to Defendant, and that Defendant accepted the offer. (*See* Email from Pomerantz to

9

Government (June 26, 2019), Gov't's Resp. in Opp. Ex. 3, Doc. 87-3, at p. 1).  Though it is the Government who presented this documentary evidence, this Court finds reasons to accept the facts therein.  Defendant's awareness of the plea agreement is evident by the facts that Defendant appeared before this Court on September 25, 2019, on his own volition, precisely for a change of plea hearing, and Defendant, under oath, stated to the Court that Defendant had read the plea agreement before the hearing, discussed it with his attorney, had signed the agreement, and wished to plead guilty.  (*See* Plea Hr'g Tr., Doc. 73, 8:1–5).  As such, contrary to Defendant's conclusory assertions, the record supports this Court's finding that Defendant was aware of the Government's plea offer before appearing at the plea hearing.  Defendant does not argue that there was another plea offer or that Pomerantz failed to communicate any other plea offer to him.  This Court finds that Defendant's claim that counsel failed to advise him of the plea offer extended by the Government lacks merit.

       Furthermore, Defendant has failed to establish the prejudice articulated by the Supreme Court in *Lafler*.  The fundamental decision of whether to plead guilty or go to trial is vested solely in the defendant, not his attorney.  *See Jones v. Barnes*, 463 U.S. 745, 751 (1983) (citing *Wainwright v. Sykes*, 433 U.S. 72, 93 n.1 (1977) (Burger, C.J., concurring); ABA Standards for Criminal Justice §§ 4-5.2, 21-2.2 (2d ed. 1980)).  As noted, after the Court engaged in the guilty plea colloquy, Defendant stated that he was aware of and understood the terms of the plea agreement.  However, Defendant refused to admit to the facts underlying the charges against him.  In light of his refusal to admit to the facts of the case, the Court did not accept Defendant's plea.  Counsel for Defendant requested time to further discuss the plea with his client.  After being provided a little more than a week to consider whether to plead guilty or go to trial, Defendant was undoubtedly aware of the existence and terms of the Government's plea offer.  He chose to have

a jury trial. Thus, Defendant has not shown that Pomerantz' purportedly ineffective advice resulted in any prejudice. The breakdown of the plea agreement was due to Defendant's refusal to accept the facts summarized by the Government to substantiate the charges against him. Defendant was afforded additional time to consider the terms of the plea agreement, the statutory penalties, and the ramification of the agreement. Under these circumstances, Defendant has not demonstrated prejudice from Pomerantz' alleged failure to provide him with the Government's plea offer. As such, his ineffective assistance of counsel claim on this basis lacks merit.

### *Pomerantz' Assistance at Trial*

Defendant also argues that Pomerantz' assistance during his criminal trial was ineffective because (1) Pomerantz had little experience with federal criminal proceedings and (2) Pomerantz' health was failing and, as a result, he did not perform effectively at trial. The Government disputes these contentions and argues that Pomerantz' performance at trial, even assuming he was sick, was objectively reasonable.

As to Defendant's argument that Pomerantz was inexperienced in federal criminal law, courts in this circuit often turn to the American Bar Association Standards when evaluating the reasonableness of counsel's performance, including trial tactics. *See United States v. Franklin*, 213 F. Supp. 2d 478, 483 (E.D. Pa. 2002) (citing *Strickland*, 466 U.S. at 688; *Gov't of the V.I. v. Weatherwax*, 20 F.3d 572, 579 (3d Cir. 1994), *rev'd on other grounds*, 77 F.3d 1425 (3d Cir. 1996)). As to a counsel's strategic or tactical decisions, "[o]nly when [counsel's] behavior revealed ineptitude, inexperience, lack of preparation or unfamiliarity with basic legal principles [will these] actions amount to ineffective assistance of counsel." *Weatherwax*, 20 F.3d at 579 (citing ABA Standards for Criminal Justice § 4-5.2 comment. at 4.67–68 (2d ed. 1980 & Supp. 1986)).

11

Defendant contends that Pomerantz had not practiced in federal criminal court in over twenty years and had primarily counseled him on real estate matters. Defendant further contends that Pomerantz is prepared to attest that he believes he was ineffective at Defendant's trial because of this inexperience in criminal law. Again, without more, these conclusory allegations are insufficient to overcome the strong presumption that counsel's performance was reasonable. *See Strickland*, 466 U.S. at 689; *Blackledge*, 431 U.S. at 74 (stating that conclusory allegations, unsupported by specifics, are insufficient to entitle a petitioner to relief under § 2255). Further, Defendant has not shown, nor does the record show, that Pomerantz had "ineptitude, inexperience, lack of preparation or unfamiliarity with basic legal principles" that would call into question his ability to effectively represent Defendant at trial, nor has he pointed to any specific portion of the trial transcript or any decisions by Pomerantz that demonstrate his inexperience. *See Weatherwax*, 20 F.3d at 579. On the contrary, Pomerantz had practiced law for over forty years. Defendant indicates that Pomerantz had advised him on real estate matters. Nonetheless, Defendant has not shown that Pomerantz' alleged inexperience with criminal law rendered his trial performance deficient.

Defendant also argues Pomerantz' poor health negatively affected his performance at trial. Courts have rejected claims of deficient performance based on an attorney's poor health where the attorney was "actively engaged in the proceedings." *See, e.g.*, *United States v. Donahue*, 792 F. App'x 165, 166–67 (3d Cir. 2019) (affirming denial of *habeas* petition and noting that counsel was "alert and attentive" throughout the proceedings and appropriately cross-examined Government witnesses, despite defendant's claim that counsel was "unconscious" at various times); *United States v. Thinh Hung Le*, 2020 WL 3830910, at *3 (E.D. Pa. July 8, 2020) (rejecting ineffective assistance claim and noting that counsel delivered lengthy opening and closing

statements and cross-examined Government witnesses, despite his own admission that he felt physically and mentally drained and sick).

Defendant further argues that Pomerantz was hospitalized due to internal bleeding the day after trial. He contends that Pomerantz is prepared to offer an affidavit detailing his failing health and attesting that he failed to introduce exculpatory evidence because of his condition. As noted, Defendant has not attached any affidavit from Pomerantz in support of any of his claims. Even assuming the veracity of Defendant's contentions, a careful review of the trial record and transcript reveals that Pomerantz was actively engaged on each day of Defendant's four-day criminal trial. Pomerantz introduced evidence, performed direct and cross-examination of numerous witnesses, including Defendant, offered objections to opposing counsel's questioning, and delivered lengthy opening and closing statements. *Cf. Thinh Hung Le*, 2020 WL 3830910, at *3. Although he may have been hospitalized shortly after the trial concluded, there is no evidence that Pomerantz' alleged poor health prevented him from actively engaging in the trial proceedings. Thus, Defendant has failed to overcome the presumption that Pomerantz' trial performance was reasonable. *See Strickland*, 466 U.S. at 689.

Because Defendant has not shown that Pomerantz' performance at trial was deficient, this Court need not consider the prejudice prong of the analysis. *See Thinh Hung Le*, 2020 WL 3830910, at *3 (citing *Strickland*, 466 U.S. at 697). Therefore, Defendant's claims for ineffective assistance of counsel during his trial based on Pomerantz' inexperience with criminal law and poor health are, therefore, denied.

**CONCLUSION**

For the reasons set forth herein, this Court finds that Defendant's motions under 28 U.S.C. § 2255 to vacate, set aside, or correct a sentence lack merit and are denied. Further, this Court

finds that reasonable jurists would not disagree with this Court's assessment of Defendant's claims. Accordingly, this Court declines to issue a certificate of appealability. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). An Order consistent with this Memorandum Opinion follows.

*NITZA I. QUIÑONES ALEJANDRO*, J.